**MARTIN MARIETTA ALUMINUM, INC., a California Corporation, Plaintiff-Appellant,**

v.

**GENERAL ELECTRIC COMPANY, a New York Corporation, Defendant-Appellee.**

No. 76–3763.

United States Court of Appeals, Ninth Circuit.

Nov. 13, 1978.

---

John E. Ederer (argued), of Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for plaintiff-appellant.

Coleman P. Hall (argued), of Karr, Tuttle, Koch, Campbell, Mawer & Morrow, Seattle, Wash., for defendant-appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Martin Marietta Aluminum, Inc. (MMA), brought this action for damages as a result of the breakdown of 12 high voltage rectifier transformers at its aluminum reduction plant. MMA contends that its losses were the result of improper design and manufacture by General Electric Company (GE), which by contract supplied the plant's high voltage electrical system. The complaint alleged that GE was negligent and was liable for breach of implied and express warranties. An amended complaint added causes sounding in fraud and strict liability.

In its answer, GE denied the charging allegations and raised seven affirmative defenses, including MMA's failure to comply with a contractual arbitration clause. Following discovery, GE moved for summary judgment on the basis of several of its affirmative defenses. The district court granted the motion solely on the ground that MMA had failed to comply with the contractual provision requiring MMA to seek arbitration prior to instituting suit.

The contract between MMA[1] and GE consisted of a Purchase Order, General Conditions for Procurement of Equipment and three volumes of specifications. Section 24 of the General Conditions provided:

*Arbitration.* If any controversy arising out of the Purchase Order cannot be settled or adjusted by mutual agreement of Seller and Harvey, then either party may, within six (6) months after such controversy shall have arisen, request arbitration of such controversy to be held in the State of Washington under the rules of the American Arbitration Association; provided, however, that a request for arbitration of any controversy regarding any warranty of Seller set forth in the Purchase Order may be made at any time during the period of warranty or within six (6) months thereafter. If arbitration is entered into, the judgment on the award may be entered in any Washington court or federal court having jurisdiction. It shall be a condition precedent to the institution, by either Seller or Harvey, of any action at law or in equity on any matter arising out of the Purchase Order that such party shall have first requested arbitration of such matter, as aforesaid, and shall not have received the agreement of the other party to such arbitration within ten (10) days after such request.

In granting GE's motion for summary judgment, the court said in part:

The arbitration provision unambiguously provides that after a controversy arising out of the purchase order has arisen, the party seeking relief has six months to request arbitration. Such request gives the defending party the choice of accepting arbitration or forcing the plaintiff to litigate in the courts. It is clear that a request for arbitration must precede the institution of a suit. The conclusion is unavoidable that failure to request arbitration within six months of the arising of the controversy leaves the plaintiff barred. Notably, this arbitration clause was drafted by the plaintiff's predecessor, Harvey Aluminum.

On appeal MMA contends primarily that summary judgment was improperly granted because GE, by its pre- and post-litigation conduct, either waived or is estopped from

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The contract was between GE and Harvey Aluminum (Harvey). Harvey Aluminum's name was subsequently changed to Martin Marietta Aluminum, Inc.

requiring compliance with the contractual arbitration provision.[2]

### Interpretation of Arbitration Provision

Both parties agree that the arbitration clause is unique. The standard arbitration clause is *mandatory*, requiring that any dispute be arbitrated. MMA argues that the arbitration provision here "*permits* but does not require arbitration, and arbitration is possible only where both parties want to arbitrate". MMA's construction of the arbitration clause would permit a person seeking relief to decide whether to arbitrate or litigate, but require the other party to request arbitration or be forced to forego reliance on the arbitration clause as an affirmative defense.

GE contends that the arbitration clause requires the party seeking relief to request arbitration within the specified time limit, but permits the other party either to arbitrate or to refuse to arbitrate, thus forcing litigation. Under this construction if the party seeking relief does not request arbitration, the other party may do nothing and still rely on the arbitration clause as an affirmative defense.

The district court adopted GE's construction, and we agree. MMA's construction ignores the last sentence of the arbitration clause providing that, "It shall be a condition precedent to the institution" of any action that the party "shall have first requested arbitration".

### Waiver

█ As the district court recognized, a contract provision for arbitration may be waived, expressly or impliedly. Waiver is an issue to be determined by the court, based upon the facts and circumstances relied upon. *Geo. V. Nolte & Co. v. Pieler Construction Co.,* 54 Wash.2d 30, 337 P.2d 710, 713 (1959). When the defendant, by answer, has given notice of its arbitration defense, the burden is heavy on the party seeking to prove waiver. *Hilti, Inc. v. Oldach,* 392 F.2d 368, 371 (1st Cir. 1968).[3]

█ In contending that GE's conduct constituted a waiver of the arbitration clause, MMA relies upon (1) lengthy negotiations between the parties prior to suit regarding the reason and remedy for the failure of the transformers until MMA was faced with a statute of limitations deadline; and (2) extensive discovery by both parties after suit. MMA argues that GE had an obligation to request arbitration, move to dismiss the suit because of the arbitration clause, or request a stay of the proceedings pending arbitration. Instead, MMA argues, GE sat by and did nothing, and then attempted to set up the arbitration clause as a bar.

There was no obligation, however, on GE to request arbitration. That duty under the express terms of the contract was imposed only on the party seeking relief. In concluding that there was no waiver the district court noted that GE pleaded the arbitration clause as an affirmative defense[4] and that, unlike many of the cases on which MMA relied, GE had no obligation to institute arbitration. The court found that GE's "participation in discovery consisted largely of attempts to obtain elaboration of the claims made. This was justified in light of statements by counsel for plaintiff that arbitration was not requested because certain issues were not believed to be arbitrable".[5]

---

**2.** Other issues raised in the district court are discussed by both parties in their briefs. In view of our conclusion that the district court properly granted summary judgment on the contract arbitration provision, it is unnecessary to consider the other contentions.

**3.** It is true, as MMA points out, that these cases involved mandatory arbitration clauses. Neither party has cited, nor have we found, any case construing an arbitration clause similar to the one involved here. Both parties distinguish factually the cases upon which the other party relies. We see no reason, however, why the general principles set forth in *Nolte* and *Hilti, Inc.* are not applicable.

**4.** The complaint was filed on July 23, 1975. GE filed its answer on August 18, 1975.

**5.** In oral argument the court questioned counsel regarding the reasons for MMA's failure to seek arbitration before suit. Counsel replied in part:

## Estoppel

■ For the estoppel doctrine to be applicable there must be (1) acts, statements, or admissions inconsistent with a claim subsequently asserted, (2) action or change of position on the part of the other party in reliance upon such acts, statements, or admissions, and (3) a resulting injustice to such other party, if the first party is allowed to contradict or repudiate his former acts, statements or admissions. *Witzel v. Tena*, 48 Wash.2d 628, 295 P.2d 1115, 1118 (1956).

■ MMA argues that the pre-litigation settlement discussions were inconsistent with later assertion of the arbitration clause. We cannot agree, however, that GE's participation in the investigation of MMA's claims and subsequent settlement negotiations precluded its later reliance on the contractual arbitration. Nor do we find that MMA was misled by GE's conduct. Having drafted the arbitration clause, MMA was aware of its provisions. As noted *supra*, MMA took the position that there were issues outside the scope of arbitration. There was evidence also that MMA before suit had told GE it wasn't going to arbitrate.[6] As the district court found, GE relied upon the arbitration clause when it was first required to do so, i. e., in its answer to MMA's original complaint.

MMA has failed to establish the necessary elements of estoppel.

## Stay of Litigation under Federal Arbitration Act

■ MMA contends that after suit was filed GE should have applied for a stay under the Federal Arbitration Act, 9 U.S.C. § 3.[7] The Act provides for a stay pending compliance with a contractual arbitration clause. But a request for a stay is not mandatory. The Act did not impose a duty upon GE to request a stay any more than the contractual arbitration clause required it to request arbitration when the controversy arose.

## Summary Judgment

■ Nor do we find merit in MMA's contention that there are material issues of fact to be resolved in determining the claims of waiver and estoppel. The district court properly found that MMA had failed to comply with the contractual arbitration clause. The court explored in detail the reasons MMA did not request arbitration. In finding that there was no waiver or estoppel the court relied upon undisputed facts and admissions of counsel in oral argument.

We agree with the district court also that, "The language contained in the arbi-

Martin Marietta had previously indicated to General Electric that if they couldn't resolve the issue, they intended to file suit. They already indicated to GE that they did not intend to elect to exercise their option under the contract to seek arbitration.

.        .        .        .        .

Martin Marietta realized if they had to go into arbitration with it or elected to go into arbitration with it, that it would be very difficult to prove the case because of the severe restrictions imposed upon discovery in arbitration proceedings.
Tr. 7–8.
THE COURT: If I remember correctly from reading the affidavits, didn't Mr. Hall, or one of the counsel for the defendant, talk to you very early in the game and say, "How come you didn't go to arbitration," or "How come you don't go to arbitration," something like that?
MR. STOCKER: That's what he asked me.
THE COURT: What did you say?

MR. STOCKER: I said because we didn't think that this was a matter for arbitration. Tr. 16.

6. In oral argument counsel for MMA said: "The controversy arose, Martin Marietta told GE they weren't going to arbitrate even before, I believe the actual controversy arose." Tr. 17.

7. 9 U.S.C. § 3 provides:
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration, under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

tration provision is sufficiently broad to bar all of plaintiff's claims, including those for negligence, strict liability in tort, fraud and negligent misrepresentations". See, *e. g., Acevedo Maldonado v. PPG Industries, Inc.,* 514 F.2d 614, 616 (1st Cir. 1975).

AFFIRMED.