

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| **SHELTER PRODUCTS, INC.,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD78598** |
| **v.** | ) | |
| | ) | **OPINION FILED:** |
| | ) | **January 19, 2016** |
| **OMNI CONSTRUCTION COMPANY, INC.,** | ) | |
| | ) | |
| | ) | |
| **Appellant.** | ) | |

### Appeal from the Circuit Court of Cole County, Missouri
### The Honorable Patricia S. Joyce, Judge

**Before Division Three:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Gary D. Witt, Judges

Omni Construction Company, Inc., appeals from the circuit court's denial of Omni's motion to stay litigation until the conclusion of its related pending arbitration. Because there is at least one issue that is referable to arbitration, we reverse in part, affirm in part, and remand.

### Background

Omni entered into a contract with Jefferson City Retirement, LLC, d/b/a Primrose Retirement Community (Primrose), to serve as the general contractor for the construction of a retirement home in Jefferson City, Missouri. Omni entered into a subcontract with Shelter

Products, Inc., which was to provide lumber, millwork, sheathing, and related materials for the project.

A dispute arose between Omni and Primrose, as well as among various subcontractors, regarding the contract. Omni filed a mechanic's lien on Primrose's property in the amount of $1,626,419. Shelter, believing that it was owed $48,249 from Omni for work that Shelter performed, filed its own mechanic's lien on the property in that amount. Two other subcontractors also filed mechanic's liens.[1]

Shelter filed an action in the Circuit Court of Cole County, seeking to enforce its mechanic's lien, in which it named all of the entities that had filed mechanic's liens, including Omni, and sought a determination of the priority of the various liens. Shelter filed an amended petition, which also sought damages against Omni and Primrose, stating claims for breach of contract, suit on account, and quantum meruit against Omni, as well as a claim of quantum meruit against Primrose. Also named in the amended petition was Fidelity Deposit Company of Maryland (Fidelity), which Shelter alleged had issued a payment bond for the benefit of Omni's subcontractors, upon which Shelter claims that Fidelity vexatiously refused to pay despite Shelter making a proper demand.

Omni answered Shelter's claims and filed a cross-claim against all mechanic's lien holders and Primrose. Omni alleged that it had performed all work up to the specifications of the contract, and that Primrose had failed to provide full payment. Omni sought damages against Primrose in the amount of $1,626,419, enforcement of its mechanic's lien, and a determination of its priority. Omni also filed a counterclaim against Shelter, seeking reimbursement of $8,160, which it alleged that Shelter had been overpaid for the work it had performed. Because Omni's contract with Primrose was subject to an agreement to arbitrate any issues arising under the

---

[1] One of those mechanic's liens has since been resolved.

2

contract,[2] Omni commenced arbitration proceedings in South Dakota, in accordance with the agreement. Primrose filed a counterclaim in the arbitration.

Omni filed a motion to stay the proceedings in Cole County pending conclusion of the arbitration proceeding. Shelter objected, and the trial court denied the motion. This appeal followed.

### Standard of Review

"'A court must stay litigation if it determines that the parties agreed to arbitrate.'" *Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc.*, 37 S.W.3d 843, 846 (Mo. App. E.D. 2001) (quoting *Fru-Con Const. Co. v. Sw. Redevelopment Corp. II*, 908 S.W.2d 741, 744 (Mo. App. E.D. 1995)). Accordingly, in determining whether a stay of the litigation pending arbitration is mandatory, "the standard of review is essentially de novo." *Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 228 (Mo. App. W.D. 2002). Moreover, "[c]ourts favor and encourage arbitration proceedings . . . [and a]n arbitration clause is to be construed so as to favor arbitrability." *Id.* (internal quotations omitted).

### Analysis

In its two points, Omni argues that the trial court erred in refusing to stay, in its entirety, litigation pending the arbitration of its claims against Primrose because federal and state law both mandate a stay where some of the issues presented in the litigation are referable to the arbitration.

### I. The FAA mandates a partial stay of the litigation.

In its first point on appeal, Omni argues that the Federal Arbitration Act mandates a stay of the Cole County litigation. "The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2006),

---

[2] Omni's contract with Shelter is also subject to an arbitration clause. But the agreement allows Shelter "to enforce any and all construction or mechanics lien . . . in any court with jurisdiction thereof." Neither Omni nor Shelter have initiated arbitration proceedings pursuant to this agreement.

governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015). The parties agree that this litigation involves interstate commerce,[3] and that the FAA therefore applies.[4] The FAA mandates that, in a case in which "any issue [is] referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (2012). While interlocutory orders are normally not subject to appeal, the FAA states that "[a]n appeal may be taken from an order refusing a stay of any action under section 3 of this title." 9 U.S.C. § 16(a)(1)(A). Accordingly, "despite the fact that such orders are not final judgments," the denial of a mandatory stay is appealable under the FAA. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 n.2 (Mo. banc 2009).

The FAA "requires a [trial] court to issue a stay if an issue in the case is 'referable' to arbitration." *Tank Holdings, Inc. v. Bell*, No. 4:12-CV-713 JAR, 2013 WL 4502458, *13 (E.D. Mo. Aug. 22, 2013) (quoting *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 845 (8th Cir. 2012)). While 9 U.S.C. § 3 mandates a stay "of the action," the FAA has not been interpreted as requiring a stay of the entire lawsuit if only certain, but not all, issues in the lawsuit are referable to arbitration. Rather, a case may "involve[e both] arbitrable and nonarbitrable issues," in which case "a court must determine whether to stay the suit pending arbitration of the arbitrable issue or to allow the suit and the arbitration to move forward simultaneously." *WMS Gaming, Inc. v.*

---

[3] "'[T]he FAA encompasses a wider range of transactions than those actually "in commerce"—that is, "within the flow of interstate commerce."'" *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015) (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)). "[T]he FAA applies even when, for example, an arbitration agreement is executed in a single state by residents of that state if one of the parties to the agreement engages in business in multiple states." *Id.* Omni and Primrose both do business in multiple states.

[4] "The Missouri Uniform Arbitration Act (MUAA), [§] 435.350 *et seq.*, governs those arbitration matters not preempted by the FAA." *Hewitt*, 461 S.W.3d at 805 n.4. If the MUAA were applicable here, it would not have any meaningful effect on our analysis. "Missouri courts have recognized that the MUAA was 'fashioned after the [FAA]' and that '[t]he FAA and Missouri's Arbitration Act are substantially similar.'" *Id.* at 805 n.4 (quoting *CPK/Kupper Parker Commc'ns, Inc. v. HGL/L. Gail Hart*, 51 S.W.3d 881, 883 (Mo. App. E.D. 2001)).

*IGT*, 31 F. Supp. 3d 974, 977 (N.D. Ill. 2014); *see also Fru-Con*, 908 S.W.2d at 744 ("[I]f the court concludes that some but not all claims are arbitrable, [it must then determine] whether to stay the balance of the proceeding pending arbitration."). Therefore, because a stay is mandatory for issues referable to arbitration, we must determine "whether the specific dispute falls within the scope of the arbitration agreement." *Netco, Inc. v. Dunn*, 194 S.W.3d 353, 357 (Mo. banc 2006). "Ambiguities as to the scope of the arbitration are resolved in favor of arbitration." *Fru-Con*, 908 S.W.2d at 744.

The arbitration agreement between Omni and Primrose covers "[a]ny [c]laim arising out of or related to the[ir c]ontract, except claims relating to aesthetic effect and" enumerated categories of disputes for which arbitration is specifically waived. Omni's cross-claim against Primrose alleges both that Omni performed its work according to the specifications of the contract and that Primrose failed to provide full payment under the provisions of the contract, and seeks a judgment in the amount of the alleged underpayment.

Even if we were not required to read the agreement in favor of arbitration, it cannot be seriously disputed that Omni's claim that Primrose breached the contract "aris[es] out of or relate[s] to the [c]ontract" between Omni and Primrose. And Shelter makes no such argument. Shelter also makes no argument that Omni's cross-claim against Primrose for damages involves either "aesthetic effect" or issues upon which arbitration was otherwise waived. Rather, Shelter simply argues that *its own* claims against Omni are not referable to arbitration. Therefore, Shelter argues, the FAA mandates no stay of the litigation whatsoever. We will address Shelter's argument about its claims against Omni *infra*; but Shelter is simply incorrect in its argument that the FAA requires that either all or none of the litigation be stayed. To the contrary, "[a]rbitrability is to be determined on an issue-by-issue basis, without regard to the way

5

that the issues are grouped into claims." *Fru-Con*, 908 S.W.2d at 744. When an issue is referable to arbitration, the FAA mandates a stay of *that issue* in the litigation, regardless of whether there are other claims, or litigants, to which the mandatory stay do not apply. *See id*. at 746 (Where some issues are subject to mandatory stay, the issue of whether the remaining issue "should be stayed pending arbitration is a matter for the discretion of the trial court on remand."); *Netco*, 194 S.W.3d at 363 (Where some, but not all, issues, between some, but not all, parties are subject to a mandatory stay pending arbitration, the litigation is stayed as to the specific claims subject to mandatory stay, while the issue of whether the trial court should stay the litigation of all the remaining claims pending arbitration lies within the trial court's discretion.).

Omni and Primrose are subject to an arbitration agreement for all disputes arising under their contract, and they are presently arbitrating claims that are directly related to the contract. The FAA requires that these claims be stayed pending arbitration. Therefore, the trial court erred in denying a stay as it relates to Omni's cross-claim seeking judgment against Primrose for breach of the contract.

But Omni makes a similar mistake to Shelter, assuming that, because its claim for breach of contract against Primrose is "referable to arbitration[,] . . . the *entire* underlying action should be stayed." (Emphasis added.) As we have discussed, this is incorrect. Rather, the court must determine whether each individual claim is subject to a mandatory stay, and the determination to stay any remaining issues, not subject to a mandatory stay, is up to the trial court's discretion. *Fru-Con*, 908 S.W.2d at 746. Here, Omni has asserted only that a mandatory, and not a discretionary, stay applies to all claims. Accordingly, we determine whether the remaining claims are subject to a mandatory stay under the FAA.

Courts have held that the FAA "'is broad enough to [implicate the FAA's] stay of litigation between nonarbitrating parties as long as that lawsuit is based on issues referable[5] to arbitration under an arbitration agreement governed by the Arbitration Act.'" *Reid*, 701 F.3d at 846 (quoting *Contracting Nw., Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983)). However, a willing signatory to an arbitration agreement seeking a mandatory stay of litigation involving *non*-signatories must establish at least one of five theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; or (5) estoppel. *Id.*

But Omni neither references, nor makes any effort to establish, any of these theories. Rather, Omni merely makes a series of unsupported and conclusory statements that the outcome of the arbitration could conceivably affect certain claims in the litigation. Perhaps Omni is attempting to argue a form of estoppel that *Reid* implies could render litigation subject to stay if the claims in the litigation are "'based upon the same operative facts' and are 'inherently inseparable' from the claims in the arbitration." *Reid*, 701 F.3d at 846 (quoting *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002)). But Omni has made no effort to show how Shelter's claims that Omni has breached its contract with Shelter, or that Fidelity has vexatiously refused to pay on a bond that it issued on behalf of Omni's subcontractors, are "inherently inseparable" from Omni's claims that Primrose breached their contract, which are presently being arbitrated. Omni's only attempt to show any connection between the arbitration and the remaining litigation is its claim that "if Omni . . . is successful in [the a]rbitration and recovers in full from Primrose," that could "increase[] the potential recovery for Shelter and all other lien"

---

[5] The FAA "does not grant [courts] the authority to compel arbitration of a dispute." *Hill v. GE Power Sys., Inc.*, 282 F.3d 343, 347 (5th Cir. 2002). "It merely gives courts the power to stay proceedings pending the completion of arbitration." *Id.* Nevertheless, in determining whether an issue is "referable" to arbitration for purposes of implicating the mandatory stay, cases involving a party seeking to compel arbitration provide "guidance for when an arbitration agreement will implicate a nonsignatory," for purposes of a mandatory stay. *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 n.4 (8th Cir. 2012).

holders in the litigation. This potential tangential effect on the litigation falls well short of making the arbitration "inherently inseparable" from the remainder of the litigation. This is especially true given that Shelter's contract with Omni does not condition Shelter's right to payment on Omni first being paid by Primrose.

Omni next argues that both it and Primrose will be prejudiced if the litigation is not stayed while they arbitrate their claims. Specifically, Omni argues that responding to discovery in multiple venues would interfere with conducting the arbitration as agreed by the parties, and "could prejudice the claims and defenses of the parties in the [a]rbitration." Omni points to no authority holding that the potential, however remote, for this sort of prejudice is, by itself, enough to mandate a stay of litigation involving non-signatories under the FAA, and we have found none. Certainly, prejudice alone does not establish the existence of any of the five theories recognized in *Reid* as supporting the mandatory stay of non-signatory litigation. In any event, our determination to stay the litigation of Omni's contractual claims against Primrose should palliate the former concern. And Omni has not given any hint as to what defenses or claims might be prejudiced by engaging in discovery in the circuit court, or how such prejudice would likely occur. If Omni believes that certain discovery requests propounded by parties in the litigation would cause prejudice, it always has the ability to file a timely objection. The trial court is equipped to deal with those objections as with any other discovery dispute. Certainly it is inconvenient to simultaneously litigate tangentially related claims in multiple forums. But "'[w]e rigorously enforce agreements to arbitrate, even if the result is "piecemeal" litigation.'" *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 242 F.3d 777, 783 (8th Cir. 2001) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

8

Contrary to Omni's assertion, the fact that this case involves an equitable mechanic's lien action does not change the analysis. Section 429.270[6] provides for an equitable action when multiple parties assert mechanic's liens, in which: "[a]ny and all [mechanic's] liens . . . may be adjudicated and determined and the rights of all parties interested in the same . . . may be adjudicated, determined and enforced in one action." "[O]nce an equitable mechanic's lien action is brought, it is the exclusive method of litigating liens and other claims pertaining to particular property." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 430 (Mo. banc 2003). Omni is correct that "[t]he equitable mechanic's lien action does not, however, preclude the enforcement of the parties' arbitration agreement to resolve the underlying disputes." *Id*. "While an equitable mechanic's lien action is the exclusive method of litigating liens and other claims regarding property, arbitration is a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution without resort to the courts." *Id*. at 430-31. "Thus, the arbitration agreement between [Primrose and Omni] is enforceable regardless of whether multiple mechanic's liens exist creating a basis for an equitable mechanic's lien action." *Id*. at 431.

But the fact that the underlying litigation is a § 429.270 action in which several mechanic's liens have been asserted, does not necessarily mandate that the entire litigation is subject to a mandatory stay. Indeed, our Supreme Court has held that portions of a mechanic's lien action may be referred to arbitration and stayed, while other portions of the litigation may proceed. *Id*. at 432-37. Certainly the pending arbitration proceeding, as well as a partial stay, will eliminate the trial court's ability to render a final judgment on all issues as to all of the parties—particularly the rights of each of the parties to prioritize and enforce their equitable liens. *See* § 429.270 (A mechanic's lien action is "an equitable action for . . . determining the

---

[6] All statutory citations are to the Revised Statutes of Missouri 2000, unless otherwise noted.

various rights, interest and liens of the various . . . claimants . . . and owner . . . and for enforcing the rights of any and all such persons . . . and for . . . distribution of the proceeds . . . among the parties according to their respective legal and equitable rights."). But Omni has cited no authority supporting its contention that the fact that the trial court cannot issue a final judgment as to all issues involving all parties necessarily mandates a stay of the entire litigation. Indeed, such a rule would render partial stays impossible. But as addressed *supra*, the FAA allows for certain claims to be litigated while others are referred to arbitration. And the Missouri Supreme Court has held that some issues in mechanic's lien litigation may be subject to arbitration, and mandatory stay, while others are not. *Dunn Indus.*, 112 S.W.3d at 432-37.

Again, under the estoppel theory set out in *Reid*, the standard to apply the FAA's mandatory stay to non-signatories is whether the claims in the litigation are "'based upon the same operative facts' and are 'inherently inseparable' from the claims in the arbitration." *Reid*, 701 F.3d at 846 (quoting *Hill*, 282 F.3d at 347). To the extent that the trial court must finally "determin[e] the various rights, interest and liens of the various . . . claimants . . . and owner . . . and distribut[e] . . . the proceeds . . . among the parties according to their respective legal and equitable rights," under § 429.270, the court certainly cannot finally adjudicate the parties' various rights to the property and order execution until all of the underlying claims have been adjudicated, including Omni's breach of contract claim against Primrose. But we see no reason why, for example, discovery related to whether the various lien claimants (other than Omni) timely performed all work up to the specifications of the various contracts, how much they should have been paid for that work, and how much they received for the work, could not continue. Moreover, if there is any question about the validity of any of the mechanic's liens

10

based on a deficiency in the manner in which they were filed, that would be an appropriate subject for discovery and, potentially, a dispositive motion.

We grant Omni's Point I to the extent that the trial court erred in refusing to stay the litigation of Omni's claim alleging that Primrose violated the contract and seeking judgment in the amount of $1,626,419. In all other respects, it is denied.

## II.     Missouri law does not mandate a stay of the entire litigation.

In its second point, Omni asserts that, pursuant to Missouri's equitable mechanic's lien law, the litigation must be stayed until Omni's claims against Primrose are fully determined in the arbitration in order to avoid inconsistent results in the underlying litigation.

The Missouri mechanic's lien statutes[7] do mandate a stay of pending litigation under certain circumstances. For example, when an equitable mechanic's lien proceeding has been filed, "all other suits that may have been brought on any mechanic's lien claim or demand *shall be stayed* and no further prosecuted, and the parties in any such other suit shall be made parties to such equitable action."[8] § 429.300 (emphasis added). But this mandatory stay has nothing to do with arbitration, and Omni has directed us to no other statute mandating a stay pending arbitration of issues underpinning one of several mechanic's liens.

Of course, a party may request a stay pending arbitration, especially where, as here, the litigation contains multiple claims by several parties:

> In a complex, multi-party dispute of this type, issues such as the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays must be weighed in determining whether to grant a discretionary stay, and in fashioning the precise contours of any stay.

---

[7] "Sections 429.270 to 429.340 govern the enforcement and adjudication of the rights of multiple lienholders in an equitable action." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 430 (Mo. banc 2003).

[8] Arbitration, "a proceeding separate from litigation based upon its underlying purpose of encouraging dispute resolution without resort to the courts" is "an alternative to litigation," and not "a form of litigation" that would otherwise be subject to stay. *Dunn*, 112 S.W.3d at 431.

*AgGrow*, 242 F.3d at 783.

Certainly Omni is entitled to argue for a stay in the circuit court. But this is not a "mandatory" stay, as Omni asserts, subject to "*de novo*" review. Rather, where no statute mandates a stay, a motion to stay the proceedings pending arbitration "is a matter for the discretion of the trial court." *Fru-Con*, 908 S.W.2d at 746. We do not, however, review the trial court's denial of a stay for an abuse of discretion, because Omni's appeal of this issue has fundamental flaws.

First, it is not clear that the trial court has even addressed the issue of whether a discretionary stay is appropriate, because Omni argued only for a mandatory stay in its motion. "[A]n appellate court will not convict a trial court of error based on an issue which was not put before it to decide." *Doe v. Ratigan*, WD 78298, 2015 WL 6931625, *4 (Mo. App. W.D. Nov. 10, 2015) (quoting *Sheedy v. Mo. Highways & Transp. Comm'n*, 180 S.W.3d 66, 70-71 (Mo. App. S.D. 2005)). And the trial court certainly has not addressed the issue in light of our conclusion that a portion of the litigation is subject to mandatory stay.

But more importantly, "[t]he right to appeal is purely statutory, and where a statute does not give a right to appeal, no right exists." *Dunn*, 112 S.W.3d at 427. And generally, the denial of an interlocutory order "is not a final judgment and therefore not appealable." *Mr. Mudd, Inc. v. Petra Tech, Inc.*, 892 S.W.2d 389, 392 (Mo. App. E.D. 1995). Indeed, "[i]t is well settled that 'a denial of a motion to stay proceedings pending arbitration [is not] appealable in Missouri.'"[9] *VCW, Inc. v. Mut. Risk Mgmt., Ltd.*, 46 S.W.3d 118, 121 (Mo. App. W.D. 2001) (quoting

---

[9] The MUAA allows an interlocutory appeal "from: (1) An order denying an application to compel arbitration made under section 435.355; [or] (2) An order granting an application to stay arbitration made under subsection 2 of section 435.355." § 435.440. But it "does not expressly provide for an appeal from an order *denying* an application to *stay* arbitration." *VCW, Inc. v. Mut. Risk Mgmt., Ltd.*, 46 S.W.3d 118, 121 (Mo. App. W.D. 2001). In any event, Omni makes no argument that its appeal is subject to the MUAA.

*Mr. Mudd*, 892 S.W.2d at 392). As we have noted, the FAA applies to this matter, and grants appeal rights where state law does not. *Id*. (FAA "provide[s] for an appeal from 'an order . . . refusing a [mandatory] stay of any action under section 3 of this title.'" (quoting 9 U.S.C. § 16(a)(1)(A))). But that appeal right applies only to mandatory, and not discretionary, stays. *Reid*, 701 F.3d at 846.

Because the FAA does not provide authority for an interlocutory appeal from the denial of a discretionary stay, Omni's appeal is premature. Accordingly, Point II is dismissed.

### Conclusion

Because the issue of whether Primrose breached its contract with Omni is subject to a mandatory stay, the trial court's order denying a stay is reversed solely as to the breach of contract claims between Omni and Primrose and remanded as to that issue only. As to the remaining claims that are not referable to arbitration, we hold only that the litigation is not, in its entirety, subject to a mandatory stay under the FAA and Missouri law requiring all equitable mechanic's lien claims to be resolved in one case. Rather, the remedy available to Omni is to seek a discretionary stay from the trial court. *Netco*, 194 S.W.3d at 363.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge,
and Gary D. Witt, Judge, concur.

13